United States District Court
Southern District of Texas

**ENTERED**

June 22, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| YAHYA SAFI, | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | Civil No. 5:26-cv-00483 |
| | § | |
| PAMELA BONDI, | § | |
| MARKWAYNE MULLIN, | § | |
| MARCOS CHARLES, | § | |
| MIGUEL VERGARA, | § | |
| US IMMIGRATION AND CUSTOMS | § | |
| ENFORCEMENT (ICE), | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY, | § | |
| JAVIER ALEMAN, | § | |
| and TODD M. LYONS, ACTING | § | |
| DIRECTOR, UNITED STATES | § | |
| IMMIGRATION AND CUSTOMS | § | |
| ENFORCEMENT, | § | |
| *Respondents.* | § | |

## <u>REPORT AND RECOMMENDATION</u>

Before the Court are Petitioner Yahya Safi's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Dkt. No. 1; Respondents' Motion for Summary Judgment and Response to the Petition, Dkt. No. 10; Petitioner's Response, Dkt. No. 12; and the parties' supplemental briefings, Dkt. Nos. 16, 17. The Court held a motions hearing on May 29, 2026. May 29 Hr'g [hereinafter Hr'g] at 1:40–2:19. The case was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). Dkt. No. 13. For the following reasons, the undersigned respectfully **RECOMMENDS** that Respondents' Motion for Summary Judgment,

1

Dkt. No. 10, be **DENIED** and that Petitioner's Petition for a Writ of Habeas Corpus, Dkt. No. 1, be **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Petitioner Yahya Safi, a citizen of Afghanistan, was apprehended at the border of the United States in January 2025. Dkt. Nos. 1 at ¶ 43; 10 at 2.[1] Petitioner is presently detained in the custody of United States Immigration and Customs Enforcement ("ICE") at Rio Grande Detention Center in Laredo, Texas. Dkt. No. 1 at ¶¶ 4, 7.

On September 25, 2025, an Immigration Judge ("IJ") ordered Petitioner removed to Afghanistan, or alternatively to an unspecified country, based on the charge or charges contained in the Notice to Appear. Dkt. No. 10-1 at 1. Petitioner's removal order became administratively final on September 25, 2025, because Petitioner did not apply for relief from removal. Hr'g at 2:03; *see* Dkt. No. 1 at ¶ 62. Not only Petitioner, but also Department of Homeland Security ("DHS") and Respondent waived appeal. Dkt. No.10-1 at 2. Petitioner's ninety-day removal period began on September 25, 2025 and expired on December 24, 2025. Dkt. No. 1 at ¶ 62; *see* 8 U.S.C. § 1231(a)(1)(A), (B)(i). The presumptively reasonable six-month detention period recognized in *Zadvydas v. Davis* expired on March 24, 2026.[2] *See* 533 U.S. 678, 701 (2001). Petitioner, through counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 on March 24, 2026. Dkt. No. 1 at ¶ 22. When Petitioner initiated this habeas proceeding on March

---

[1] The record is unclear as to the exact date Petitioner entered ICE custody. Petitioner alleges that he was taken into ICE custody on January 21, 2025. Dkt. No. 1 at ¶ 43. Respondents state that Petitioner has remained in ICE custody since he was apprehended at the border on January 31, 2025. Dkt. No. 10 at 2. The present record does not establish whether the discrepancy results from an omitted immigration record or a clerical error. The ten-day discrepancy is not material because Petitioner's detention exceeds the relevant period under either date.

[2] Although *Zadvydas* describes the presumptively reasonable period as six months, courts commonly calculate that period as 180 days. *See* 533 U.S. at 701. Calculated from September 25, 2025, the 180-day period expired on March 24, 2026. A literal six-calendar-month calculation would yield March 25, 2026. The one-day difference does not affect the analysis because Petitioner remained detained beyond either date.

24, 2026, he had been confined for 180 days after the IJ's order became final on September 25, 2025, and for 427 days from January 21, 2025, when he allegedly first entered detention. *See* Dkt. Nos. 1 at ¶ 43; 10-1 at 1. Respondents do not contest the fact. Hr'g at 2:13–14.

Respondents' supplemental filing and hearing representations addressed why removal to Afghanistan and third-country removal were not presently available for Petitioner. Dkt. No. 16 at 1; Hr'g at 1:59–2:15. As to Afghanistan, Respondents first stated in their May 19 supplemental filing that removal was "not an option" unless the Government obtained a travel letter for Petitioner. Dkt. No. 16 at 1. Respondents also stated that the travel-letter request was still pending. *Id*. At the later hearing, Respondents did not report that the request had been granted. Hr'g at 2:10–12. Respondents explained that the travel letter remained necessary because Afghanistan requires one before its citizens may enter the country, even when DHS has the person's passport. *Id.* at 2:10–11. Respondents further stated that the United States had requested travel letters for approximately 200 to 300 Afghan nationals and had obtained some, but not most. *Id.* Respondents therefore characterized removal to Afghanistan as subject to an indefinite waiting period. *Id.*

As to third-country removal, Respondents stated that removal of Afghan nationals to third countries had been a "virtual impossibility" until recently. Dkt. No. 16 at 1. Respondents then stated that counsel learned on May 18, 2026, that the Government had arranged for some Afghan nationals to be removed to a third country. *Id.* At the hearing, Respondents identified that country as the Central African Republic. Hr'g at 2:12. But Respondents did not report any plan to remove Petitioner there. *Id.* Respondents stated that Enforcement and Removal Operations ("ERO") had no plan to remove Petitioner to the Central African Republic, and that no other country had agreed to accept him. *Id.*

Respondents did not identify a disciplinary infraction, mental health issues, prior immigration violations, flight risk, danger to the community, or failure to cooperate that would independently support continued detention. Hr'g at 2:13–14. The present record does not identify any criminal history predating Petitioner's arrival in the United States. *Id.* Petitioner has four brothers who supported the former Afghan government and the United States and now reside in the United States as lawful permanent residents. Dkt. No. 1 at ¶ 54. A credible fear interview was conducted pursuant to the Convention Against Torture. Hr'g at 2:01; *see* Dkt. No. 1 at ¶ 3. An asylum officer determined that it was more likely than not Petitioner would be tortured and killed by the Taliban if he is removed to Afghanistan because of his association with the previous Afghan government. Dkt. No. 1 at ¶ 3. No evidence suggests that Petitioner is linked to terrorist organizations. Hr'g at 2:01, 2:15.

Petitioner brings four claims: (1) He seeks declaratory relief under 28 U.S.C. § 2201. Dkt. No. 1 at ¶¶ 7–9. Petitioner alleges that his continued detention is not authorized because removal is not significantly likely in the reasonably foreseeable future; Respondents have failed to rebut that allegation; and Respondents have not complied with 8 C.F.R. §§ 241.4 and 241.13. *Id.* at ¶¶ 77–83. (2) Petitioner alleges that Respondents violated the Immigration and Nationality Act and its implementing regulations, including 8 U.S.C. § 1231(a)(1)–(3) and 8 C.F.R. §§ 241.4 and 241.13, by continuing to detain him rather than releasing him under an Order of Supervision. *Id.* at ¶¶ 84–89. (3) Petitioner alleges that his continued detention violates the Due Process Clause of the Fifth Amendment. *Id.* at ¶¶ 90–93. (4) Finally, Petitioner alleges that Respondents' continued-detention policy violates the Administrative Procedure Act because it is arbitrary, capricious, and contrary to law. *Id.* at ¶¶ 94–99; *see* 5 U.S.C. § 706(2)(A), (B).

4

Petitioner requests several forms of relief.  He asks the Court to: (1) exercise jurisdiction; (2) expedite consideration of the Petition and issue an Order to Show Cause; (3) restrain Respondents from moving him outside Texas while the Petition remains pending; (4) require seventy-two hours' notice before any intended movement; (5) require Respondents, before removing Petitioner to an allegedly safe third country, to provide a full merits hearing before an IJ on asylum, withholding of removal, and deferral of removal under the Convention Against Torture, with a right to appeal to the Board of Immigration Appeals; (6) order his immediate release; (7) declare that Respondents acted arbitrarily and capriciously; (8) declare that Respondents failed to comply with binding regulations and precedent; (9) declare that his detention violates the Due Process Clause of the Fifth Amendment; (10) permanently enjoin removal to a third country unless Respondents provide the requested immigration proceedings; and (11) award attorney's fees and costs under the Equal Access to Justice Act.  Dkt. No. 1 at ¶¶ 1–11.

Respondents filed a Motion for Summary Judgment and Response to the Petition.  Dkt. No. 10.  Petitioner filed a Response.  Dkt. No. 12.  The Court ordered Respondents to supplement their Motion with any updates concerning efforts to facilitate Petitioner's removal to a third country and directed the parties to address permissible terms of supervised release or any justification for continued detention.  Dkt. Nos. 14, 15.  Respondents filed a Supplement.  Dkt. No. 16.  Petitioner filed a Supplemental Response.  Dkt. No. 17.  The Court held a motions hearing on May 29, 2026.  The motions are ripe for decision.

## II. LEGAL STANDARDS

Respondents' request for summary judgment on a habeas petition requires the Court to apply both 28 U.S.C. § 2241 and Federal Rule of Civil Procedure 56.  A person held in federal custody may seek habeas relief if the detention violates the Constitution, federal law, or a treaty of

the United States.  28 U.S.C. § 2241(c)(3).  District courts have subject matter jurisdiction to consider Section 2241 petitions challenging the lawfulness of a noncitizen's detention.  *Imran v. Harper*, No. 25-30370, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026) (per curiam) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003)).  The Fifth Circuit has likewise recognized that "federal courts retain habeas jurisdiction to review statutory and constitutional claims."  *Bravo v. Ashcroft*, 341 F.3d 590, 592 (5th Cir. 2003).  The petitioner bears the burden of establishing facts sufficient to warrant habeas relief.  *See Irving v. Breazeale*, 400 F.2d 231, 236 (5th Cir. 1968).  The petitioner bears the burden of proving by a preponderance of the evidence that the detention is unlawful.  *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).  A court considering a habeas petition must promptly award the writ or direct the respondent to show cause why the writ should not issue unless the petition shows that the petitioner is not entitled to relief.  28 U.S.C. § 2243.  After receiving the return, the court must determine the facts and dispose of the matter as law and justice require.  *Id.*

Summary judgment is appropriate if the movant establishes that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases."  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (internal citations omitted).  The Court may not weigh the evidence, make credibility determinations, or resolve factual disputes at the summary-judgment stage.  *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021).  The nonmovant opposing summary judgment may not rely solely on conclusory allegations, unsubstantiated assertions, or a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

6

The movant bears the initial Rule 56 burden. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). "If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by 'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The Court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Guzman,* 18 F.4th at 160. If the movant fails to satisfy its initial burden, "the motion must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371.

### III. DISCUSSION

The Court first addresses subject matter jurisdiction. The Court has jurisdiction because Petitioner challenges his present physical custody and is detained in this District. A Section 2241 petitioner who challenges present physical custody in the United States generally must file in the district of confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). In *Trump v. J.G.G.*, the Supreme Court reiterated that a habeas petition belongs in the district of confinement. 604 U.S. 670, 672 (2025) (per curiam). Petitioner is presently detained at Rio Grande Detention Center in Laredo, Texas. Dkt. No. 1 at ¶ 7. Rio Grande Detention Center is located within the Southern District of Texas. *Id.* at ¶ 24. Respondents conceded at the hearing that *Zadvydas* governs the analysis of Petitioner's continued post-removal detention.[3]  Hr'g at 2:00; *see* 533 U.S. at 701. Accordingly, the Court has jurisdiction under 28 U.S.C. § 2241 to consider Petitioner's challenge to the lawfulness of his continued detention. *See Padilla*, 542 U.S. at 442–43.

---

[3] Respondents initially argued that *Zadvydas* did not decide whether Section 1231(a)(6)'s reasonable-time limitation applies to noncitizens detained at the threshold of initial entry and suggested that the limitation did not apply to Petitioner. Dkt. No. 10 at 3–5. That argument rested on the entry-fiction doctrine, which treats certain noncitizens denied entry as if they were stopped at the border for some constitutional purposes, even if physically present in the United States. *Id.* At the hearing, however, Respondents withdrew that position and conceded that *Zadvydas* applies in this case. Hr'g at 2:00.

The material facts relevant to Petitioner's continued detention are undisputed.  The parties did not materially dispute the relevant facts at the May 29 hearing.  Hr'g at 1:50–55, 2:13.  Viewing the evidence in Petitioner's favor, Respondents have not shown an absence of evidence supporting Petitioner's claim.  *See Guzman*, 18 F.4th at 160; *Duffie*, 600 F.3d at 371.  Petitioner identifies specific obstacles to removal rather than relying solely on the duration of his detention.  Dkt. Nos. 1 at ¶¶ 44–56; 12 at 4–6; *see also* Hr'g at 1:50–55.  Because the parties do not dispute those underlying facts, the dispositive question is whether those facts establish that Respondents are entitled to summary judgment as a matter of law.  *See Duffie*, 600 F.3d at 371.

The Court first considers whether Petitioner has been detained beyond the presumptively reasonable period.  The removal period begins on the latest of the dates specified in Section 1231(a)(1)(B), including "[t]he date the order of removal becomes administratively final."  8 U.S.C. § 1231(a)(1)(B)(i).  In *Zadvydas*, the Supreme Court construed Section 1231(a)(6) not to authorize indefinite detention.   533 U.S. at 689. The Court identified six months as the presumptively reasonable period of post-removal-order detention.  *Id.* at 701.  The same statutory limitation applies to inadmissible aliens.  *Clark v. Martinez*, 543 U.S. 371, 379 (2005).  Petitioner's removal order became administratively final on September 25, 2025, because Petitioner did not apply for relief from removal.  Hr'g at 2:03.  Respondents also waived appeal.  Dkt. No.10-1 at 2. Petitioner's ninety-day removal period began on September 25, 2025 and expired on December 24, 2025.  Dkt. No. 1 at ¶ 62; *see* 8 U.S.C. § 1231(a)(1)(A), (B)(i).  Since September 25, 2025, is the correct date of administrative finality, the six-month period recognized in *Zadvydas* expired on March 24, 2026.  *See* 533 U.S. at 701.  Thus, his detention has exceeded the presumptively reasonable six-month period, and Respondents do not dispute the fact.  Hr'g at 2:13.

The Court next considers whether Petitioner has made his initial showing under *Zadvydas*. Petitioner has provided good reason to believe that his removal is not significantly likely in the reasonably foreseeable future. Detention beyond six months is not automatically unlawful. *Zadvydas*, 533 U.S. at 701. After six months, however, the detainee may seek release by providing good reason to believe that removal is not significantly likely in the reasonably foreseeable future. *Id.* A detainee cannot satisfy that burden merely by pointing to the length of detention or making conclusory statements that removal is unlikely. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). Petitioner identifies concrete obstacles to removal and relies on more than the duration of his detention. Dkt. Nos. 1 at ¶¶ 44–56; 12 at 1–6; Hr'g at 1:50–55. An asylum officer determined that Petitioner would be tortured and killed if removed to Afghanistan. Dkt. Nos. 1 at ¶ 3; 12 at 5. Petitioner has remained detained for nearly eighteen months. Hr'g at 1:51. Afghanistan has not responded to the request for travel documents and has not issued any documents to accept Petitioner. *Id.* No third country has agreed to accept him. *Id.* Petitioner is nonviolent, poses no flight risk, and has family ties in the United States. *Id.* at 1:52–53. He has no criminal history or disciplinary infractions. *Id*. at 1:53–54. He has not received a custody review. *Id*. at 1:54, 2:14. Because Petitioner has provided good reason to believe that his removal is not significantly likely in the reasonably foreseeable future, and identifies concrete obstacles without making conclusory statements, Petitioner has satisfied his initial burden.

The Court then considers whether Respondents have rebutted Petitioner's showing that his removal is not significantly likely in the reasonably foreseeable future. Here, Respondents have not rebutted Petitioner's initial burden with sufficient evidence. Once a detainee provides good reason to believe that removal is not significantly likely in the reasonably foreseeable future, the Government must rebut that showing with sufficient evidence. *Zadvydas*, 533 U.S. at 701. If the

Government cannot do so, a detainee must be released, subject to supervision. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). At the May 29 hearing, Respondents did not report that the travel-letter request for Afghanistan had been granted. *Id.* at 2:10–12. Respondents explained that Afghanistan requires a travel letter before its citizens may enter the country, even when DHS has the person's passport. *Id.* at 2:10–11. Respondents further characterized Petitioner's removal to Afghanistan as subject to an indefinite waiting period. *Id.* As to third-country removal, Respondents stated that ERO had no plan to remove Petitioner to the Central African Republic. *Id.* at 2:12. Respondents also stated that no other country had agreed to accept him. *Id.*

Furthermore, Respondents did not identify any failure by Petitioner to cooperate with removal efforts or any action by Petitioner that prevented his removal. Hr'g at 2:13–14; *see* 8 U.S.C. § 1231(a)(1)(C). Respondents also did not contest Petitioner's lack of a disciplinary infraction, mental-health concern, prior immigration violation, flight risk, danger to the community, or other factor weighing against release. Hr'g at 1:50–55, 2:13. The present record does not identify any criminal history predating Petitioner's arrival in the United States. *Id.* Petitioner has family ties in the United States. Dkt. No. 1 at ¶ 54. No evidence suggests that Petitioner is linked to terrorist organizations. Hr'g at 2:15. Respondents stated that DHS could release Petitioner subject to conditions. *Id.* at 2:13; *see* Dkt. No. 16 at 1–2. Therefore, Respondents have not rebutted Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. Hr'g at 2:09–12. The Court should grant Petitioner's Petition in part and order his prompt release. Upon release, Petitioner shall remain subject to applicable terms of supervision determined by DHS. *See* 8 U.S.C. § 1231(a)(3), (6); Dkt. No. 16 at 1.

If the Court orders the release of Petitioner, his remaining requests for relief become moot, unripe, or need not be reached. Petitioner's requests for expedited consideration and an Order to

10

Show Cause, and his transfer-related requests are moot. Dkt. No. 1 at ¶¶ 2–4. Petitioner's third-country-removal requests should be dismissed without prejudice as unripe because Respondents have not identified any third country that has agreed to accept him. *Id.* at ¶¶ 5, 10; Hr'g at 2:12. If the Court concludes that Petitioner is entitled to release, the Court need not reach his independent Fifth Amendment claim or his broader requests for declaratory relief. *See Zadvydas*, 533 U.S. at 689, 701; *Escambia Cnty. v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam). The Court should therefore decline to address Petitioner's requests for declarations that Respondents acted arbitrarily and capriciously, failed to comply with binding regulations and precedent, or violated the Due Process Clause. Dkt. No. 1 at ¶¶ 7–9.

Lastly, Petitioner's request for attorney's fees under the Equal Access to Justice Act should be denied. Dkt. No. 1 at ¶ 11. The Equal Access to Justice Act authorizes attorney's fees in specified civil actions against the United States. 28 U.S.C. § 2412(d)(1)(A). However, because a habeas proceeding is a hybrid action rather than a purely civil action, the Fifth Circuit has held that the Act does not authorize attorney's fees for successful motions under 28 U.S.C. § 2241. *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023); *see also Imran*, 2026 WL 93131, at *2; *Banegas Avila v. Frink*, No. H-26-916, 2026 WL 976144, at *5 n.4 (S.D. Tex. Apr. 10, 2026).

### IV. CONCLUSION

For the foregoing reasons, the undersigned requests that the District Court **ADOPT** the findings of fact set forth above. Further, the undersigned respectfully **RECOMMENDS** that Respondents' Motion for Summary Judgment, Dkt. No. 10, be **DENIED**. The undersigned further **RECOMMENDS** that Petitioner's Petition for a Writ of Habeas Corpus, Dkt. No. 1, be **GRANTED IN PART AND DENIED IN PART**.

Accordingly, the undersigned **RECOMMENDS** that Respondents promptly release Petitioner from continued detention.  Upon release, Petitioner shall remain subject to applicable conditions of supervision determined by DHS consistent with 8 U.S.C. § 1231(a)(3) and (6).  The undersigned further **RECOMMENDS** that the District Court's order include any additional conditions pertaining to Petitioner's release that it finds necessary to effectuate the order.

The undersigned further **RECOMMENDS** that Petitioner's requests for expedited consideration and an Order to Show Cause be **DENIED AS MOOT**; that his temporary transfer-related requests be **DENIED AS MOOT** upon his release; that his requests concerning removal to a third country be **DISMISSED WITHOUT PREJUDICE**; and that his request for attorney's fees under the Equal Access to Justice Act be **DENIED**.

IT IS SO RECOMMENDED.

Signed this June 22, 2026, in Laredo, Texas.

 

Diana Song Quiroga
United States Magistrate Judge

### **<u>Warnings</u>**

The parties may file objections to this Report and Recommendation, unless they waive the right to do so.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report—or the party's waiver of the right to do so—shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).